**FILED**

**November 16, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*No.* 22-0081, *In re K.L.*

**ARMSTEAD, Justice, dissenting:**

There is ample evidence in the record supporting the termination of Petitioner's parental rights. The Petition included allegations of Petitioner's drug use, during the proceeding DHHR specifically reserved the right to introduce evidence of Petitioner's drug use, Petitioner acceded to the requirement of DNA drug testing by agreeing to it during the dispositional hearing, and he thereafter refused to test pursuant to his agreement. Termination of his parental rights was proper for failing to comply with the terms of his post-dispositional improvement period. Therefore, I respectfully dissent.

In its opening paragraph, the majority opinion acknowledges that the Petition in this matter contained allegations of Petitioner's substance abuse. As noted therein, Petitioner was never adjudicated on this allegation, having stipulated only to the allegations of educational and medical neglect. The majority opinion goes on to say:

> During the underlying proceedings, petitioner either tested negative for illegal substances or refused to drug screen, denying any substance abuse disorder. He maintained this denial throughout the proceedings despite having admitted to prior occasional use, being arrested in possession of methamphetamine, and being twice found in possession of synthetic urine subsequent to adjudication—once during a drug screening.

1

Following his stipulation, Petitioner moved for and was granted a post-dispositional improvement period. On the record at the dispositional hearing, there was a long discussion about the requirement for drug testing:

> MS. GEYER: I appreciate that, but can we start with the drug screening first and make sure that's not an issue?
>
> THE COURT: Yeah.
>
> MS. GEYER: And I don't disagree that if in fact they're able to successfully complete drug screens and have that not be an issue – if it is an issue, we want them to get therapy or treatment for it. I don't want them to ignore a drug problem and put a child back there. If it's not a problem, then certainly we would be – because that was the step we were gonna [sic] take, but we just need the drug issues addressed, too.
>
> THE COURT: And I can tell you now based on what heard, you both are gonna [sic] need to be patted down every time, every time.
>
> MS. GEYER: Your Honor, can we just do the DNA testing, because that's a swab in the mouth, and then they can match that up. That's when they stopped doing it, when we were going to institute the DNA testing. They do a swab one time, they observe one time. At the same time they do that swab they do an observed urine, and then they never have to observe them because they can match that DNA up with a urine sample every time. So[,] then we know it's their urine, we don't have any issues with them bringing in synthetic urine, we don't have to question that. That was what we proposed at the one MDT. But then when [the mother] went that day and they were gonna do the swab, she refused.
>
> THE COURT: Well, I'll say this. And I imagine it's probably true in your case, given what I have heard about your opinion of government. If you oppose that – do you agree with that, first of all?

2

[PETITIONER]: Yeah, that's fine. That was never proposed to us at an MDT.

MR. NORMAN: They were asked to do the DNA test before, like almost immediately preceding the MDT, and then we came into the MDT and they said, hey, we have this DNA test.

THE COURT: Well, if after talking to your attorneys or whatever and you don't oppose that, then let's do that then. That will keep you from having to be searched, I suppose, every time.

….

THE COURT: All right. What I don't want you guys to be afraid to do, is if you have a drug problem and you're using drugs, don't be afraid of a positive test. Just because you have a positive test doesn't mean I'm going to terminate your parental rights. I don't want you to think that. The positive test gives us a baseline to say here's what they're using and maybe here's how much they're using, and from there we can figure out how we try to help you remedy that problem, and if you don't end up remedying then you need to worry.

Once it's positive and once we tell you here's what you need to try to do in order to get off of it, and then you don't follow those recommendations, then you gotta [sic] worry about it. But don't worry about, you know, a bunch of positive tests – not a bunch, but at least the initial positive test and even a couple, to hopefully try to get you off. But if it's bad, you know, you may have to go to crisis unit, the whole works, I don't know, if you want your kid back. Okay.

Documenting the hearing in which the improvement period was granted, the circuit court order states:

> WHEREUPON, the Court engaged in a discussion with counsel about the evidence presented and the appropriate disposition. The Court noted that [Petitioner] withdrew [his] Motions for Post-Adjudicatory Improvement Periods and questioned Post-Disposition Improvement Periods. Counsel for all parties indicated there would be no objection to Post-Disposition Improvement Periods, but the DHHR requested that [Petitioner] drug screen first to determine what additional services are needed to address the drug issues and requested DNA testing given the concerns with synthetic urine. *The Court questioned whether [Petitioner was] agreeable to DNA testing, and [he] did so agree.*

(emphasis added). The circuit court then granted a post-dispositional improvement period. Clearly, the circuit court order memorialized that Petitioner agreed to DNA drug testing as a condition of that improvement period. As the majority opinion notes, following this order, Petitioner refused to drug screen on the grounds that the circuit court never ordered him to drug screen. Petitioner was also arrested for possession of controlled substances during the course of the proceedings below and was found to be in possession of synthetic urine. Accordingly, the circuit court terminated Petitioner's parental rights on the grounds that he failed to comply with the terms of the post-dispositional improvement period.

The majority opinion, in my view, incorrectly concludes that the circuit court improperly terminated Petitioner's parental rights. However, a proper application of applicable West Virginia law to the facts present here demonstrates the termination of

4

Petitioner's parental rights should be affirmed. Our law requires a circuit court, when granting a post-disposition improvement period to, "make[] a finding, on the record, of the terms of the improvement period." W. Va. Code § 49-4-610 (3)(B) (2015). Following the grant of the improvement period herein, Petitioner became "responsible for the initiation and completion of all terms of the improvement period." W. Va. Code § 49-4-610(4)(A). Here, the majority opinion essentially finds that the Petitioner was relieved of this responsibility. However, Petitioner acquiesced to the requirement of DNA drug testing by agreeing to it at the dispositional hearing, as memorialized in the court order.

Petitioner maintains that he was not required to drug test because the circuit court directed that the terms of the drug testing were to be included in the family case plan and that no such plan was developed. This argument is unpersuasive. The circuit court's statements during the hearing granting the Petitioner a post-dispositional improvement period as well as the circuit court's order granting such improvement period clearly directed the Petitioner to participate in drug testing. The absence of a family case plan setting forth the details of such testing does not relieve Petitioner from participating in drug testing in which he was not only directed to participate but agreed to do on the record before the circuit court. *See In re: C.A. & R.A.-1*, No. 16-0470, 2016 WL 4987285, at *3 (W. Va. Sept. 19, 2016) (memorandum decision) ("We cannot find that the Rules of Procedure for Child Abuse and Neglect Proceedings or the related statutes have been substantially

5

disregarded or frustrated" where a case plan was not developed but abusing parent knew what was expected of him.); *In re P.P.*, No. 22-0168, 2022 WL 4355450, at *2 (W. Va. Sept. 20, 2022) (memorandum decision) (DHHR's filing of case plan five months late did not substantially disregard the process where "petitioner was aware of the steps necessary to remedy the conditions of abuse and neglect."); *In re E.K.*, No. 20-0150, 2020 WL 5653378, at *3 n.4 (W. Va. Sept. 23, 2020) (memorandum decision) ("Here, petitioner testified that she remembered attending a multidisciplinary treatment meeting where the terms of the family case plan were formulated and that she was fully aware of the terms of her improvement period. Petitioner does not argue that the lack of a formal recitation of the terms of her case plan prejudiced her. Although we agree that the DHHR's failure to file a family case plan is problematic, we find that petitioner was fully aware of her requirements under the agreed upon case plan and, therefore, the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes were not so substantially disregarded or frustrated as to warrant vacation of the resulting dispositional order."). The Petitioner cannot credibly assert that he did not know that he was required to drug test. Indeed, the record before us could certainly lead to the conclusion that the Petitioner's objection to drug testing was not a result of confusion over whether such testing was required, but instead results from the discovery that Petitioner possessed synthetic urine.

6

Accordingly, when the circuit court terminated Petitioner's parental rights, it did not do so based upon drug use impacting the ability to parent. Instead, it did so based upon Petitioner's failure to comply with the terms of the improvement period:

> The Court did consider the evidence presented at the Disposition Hearing, as well as [Petitioner's] refusal to drug screen since, and the parties' positions and arguments; and did and does FIND that [Petitioner has] failed to participate in a Post-Disposition Improvement Period by failing to drug screen; ORDER any Post-Disposition Improvement Period terminated; FIND that there is no reasonable likelihood that the conditions of abuse and neglect will be substantially corrected in the near future, []and FIND it is in the best interest and necessary for the welfare of the child [K.L.] for the [Petitioner's] parental rights to be TERMINATED.

Termination of parental rights based upon Petitioner's failure to comply with the requirement of drug testing was well within the circuit court's discretion. "It is within the court's discretion to grant an improvement period ... [and] it is also within the court's discretion to terminate the improvement period ... if the court is not satisfied that the [parent] is making the necessary progress." Syl. Pt. 2, *In re Lacey P.,* 189 W.Va. 580, 433 S.E.2d 518 (1993); *See also In re B.C.*, No. 12-0395, 2012 WL 4069561, at *4 (W. Va. Sept. 7, 2012) (memorandum decision) ("[T]he circuit court noted that petitioner's improvement period was revoked because of his failure to participate in the services" and subsequently terminated parental rights.); *In re Z.M.*, No. 14-0283, 2014 WL 4799387, at *2 (W. Va. Sept. 22, 2014) (memorandum decision) (Petitioner father "exhibit[ed] noncompliance with the circuit court's orders when he refused to test for drugs

7

at the dispositional hearing. This evidence supports the circuit court's findings and conclusions that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected and that termination is necessary for the children's welfare."); *In re S.M.*, No. 13-0943, 2014 WL 629535, at *2 (W. Va. Feb. 18, 2014) (memorandum decision) (no reasonable likelihood conditions of abuse and neglect could be corrected in the near future when parent refused to submit to drug screens."); *In re C.L.*, No. 21-0926, 2022 WL 1506014, at *3 (W. Va. May 12, 2022) (memorandum decision) (failing to submit to drug screens, among other factors, are grounds for termination of parental rights). Because Petitioner failed to comply with the terms of the improvement period requiring drug testing, it was entirely proper for the circuit court to terminate Petitioner's parental rights in this matter.

For the foregoing reasons, I respectfully dissent.